## CURRIER *v.* BOSTON AND MAINE RAILROAD.

Under a rule for a specification, if all the items claimed are specified, evidence in support of them will be admissible, under any count of the declaration to which it applies, though the specification, in terms, is made under other counts.

If a magistrate makes two certificates relative to the taking of the same deposition, it will not be rejected, if, on reading both, it appears that the requisites of the statute have been complied with.

A commissioner appointed under the statute of 1830, remains in office, notwithstanding the repeal of that statute by the Revised Statutes.

Entries in the books of a party by his clerk and book-keeper, are evidence against him, unless shown to be erroneous or mistaken. They will not be rejected because the facts stated were derived from others, and not from the owner of the books.

In an action for services in building a railroad, entries in the contractor's books, of prices paid to his workmen, are not evidence against him of the prices he was to receive. If the question is of the reasonable value of his services, they are admissible, because they tend to show the worth of one item of his claim, that is, of the muscular power employed.

Where a profile of work was referred to by parties, when making a contract for grading a railroad, a profile proved by a witness to be made from the same data and measurements, cannot be admitted, unless the absence of the original is first accounted for.

ASSUMPSIT. In the declaration were four counts, all substantially for the same matter, the grading of a section of the defendants' road. The first count was on an account annexed; the second, general *indebitatus assumpsit* for work, &c.; the third, general *quantum meruit* for the same; and the fourth, general count for money paid out, &c. At a prior term, under a rule for a specification, the plaintiff filed one under the second and fourth counts, but not any under the third. The defendants objected that that was an abandonment of the third count, and therefore the plaintiff could not now rely upon and give evidence under that count. But the court overruled the objection, and it not appearing that it would be any surprise on the defendants, allowed the plaintiff to put in evidence under that count, in relation to those matters substantially embraced in the other counts,

and which the parties understood to be the claims which the action was brought to recover.

On the trial, the defendants offered the deposition of Henry Bacon; affixed to the commencement of the same, was a caption, as follows:

" State of Illinois, Cook county, ss.   Personally appeared before me, the within named Henry Bacon, at the City Hotel, in Chicago, in said county of Cook, on the fourteenth day of June, A. D. 1853, and made solemn oath that the within deposition, by him subscribed, contains the truth, the whole truth, and nothing but the truth, relative to the cause for which it was taken.   Taken at the request of the Boston and Maine Railroad, a corporation doing business at Dover, in the county of Strafford and State of New Hampshire, to be used at the court of common pleas, to be held at Dover aforesaid, in and for said county of Strafford, on the third Tuesday of August next, in a plea of the case, wherein Samuel Currier, of said Dover, is plaintiff, and said Boston and Maine Railroad is defendant.   The said Currier being duly notified, as appears by the annexed notice and certificate of service, was not present, and did not object.   The deponent living more than ten miles from the place of trial, and without the State of New Hampshire, is the cause of this caption.

" ALEXANDER S. PRENTISS,
" Commissioner, &c., for the State of New Hampshire."

Attached to this caption, was a copy of the notice of the taking, in due form, to the plaintiff, with a return showing due service on him, notifying him of the taking of depositions at the place and on the day mentioned in the caption, *at ten o'clock in the forenoon.*   The deposition consisted of several sheets, and at the close was a certificate, as follows:

Currier *v.* Boston and Maine Railroad.

"I, Alexander S. Prentiss, of the city of Chicago, in the county of Cook and State of Illinois, a commissioner appointed by the governor of the State of New Hampshire, under and by virtue of a statute of said State, entitled ' An act to authorize the appointment of commissioners without this State, to administer oaths and take acknowledgments of deeds,' do hereby certify, that previous to the examination of the said Henry Bacon, whose name was subscribed to the foregoing deposition, as a witness in the said suit between the said Samuel Currier, plaintiff, and the said Boston and Maine Railroad, defendant, in the court of common pleas for the county of Strafford, in the State of New Hampshire, he was duly sworn by me, as such commissioner, to testify the truth in relation to the matters in controversy between the said Samuel Currier, plaintiff, and the said Boston and Maine Railroad, defendant, so far as he should be interrogated concerning the same. And I further certify that the said deposition was taken at the City Hotel, in the city of Chicago, in the county of Cook, and State of Illinois, on the fourteenth day of June, at ten o'clock in the forenoon. And that after said deposition was taken by me as aforesaid, the interrogatories and answers thereto, as written down, were read. over to the said Henry Bacon; and that thereupon the same were signed and sworn to by the said Henry Bacon before me, the oath being administered by me as such commissioner, at the place and on the day and year last aforesaid.

" ALEXANDER S. PRENTISS,
" Commissioner, &c. for the State of New Hampshire."

To said caption and certificate, respectively, was affixed opposite the signature of the commissioner, his official seal as such. The plaintiff objected to the admission of said deposition, on account of defect in the caption, and it was rejected.

The defendant offered a witness, who testified that he

was clerk for the plaintiff while engaged in the work to re-
cover for which this action is brought, and kept his books;
that the plaintiff gave him the amounts of the monthly esti-
mates of the work, and of the money the plaintiff received
thereon, and he entered the same in an account he kept with
the defendants in said books; that said books were and had
been in his possession, and the said plaintiff had never, to
his knowledge, seen said accounts; that the prices mention-
ed in said account were carried out as he understood them
to be, from some one, he did not now recollect whom, but it
was not from the plaintiff, and the plaintiff never gave him
any directions to carry out the prices, or stated to him what
they were. The witness further testified that, on a former
trial in this case, he was a witness for the plaintiff; that he
then produced these books at the request of one of the par-
ties, he did not recollect which; that on inquiry by the
plaintiff, some reference was had to other entries in the
books, to support some of the items in the plaintiff's specifi-
cation. There were various accounts in the books with
workmen, &c. The defendants proposed to put the entries
in said account with them, in evidence against the plaintiff,
as to the prices of the work. But the court rejected them
for that purpose.

To prove the contents of a profile of the work, to which
it appeared the parties had some reference when the con-
tract for the work was made, the defendants offered a wit-
ness, who produced a profile which he testified was like the
original which the parties had; that it was drawn from the
original data and measurements from which the original
was drawn, at what time or by whom did not appear. The
non production of the original not being satisfactorily ac-
counted for, the profile produced by the witness was rejected
by the court.

A verdict being rendered for the plaintiff, the defendants
moved that the same might be set aside, and a new trial

granted, on account of error in said proceedings of the court.

*Christie & Kingman,* for the plaintiff.

1. The specification was sufficient, unless objected to and ruled imperfect by the court. *Humphrey* v. *Cortelyou,* 4 Cow. 54; *Goodrich* v. *James,* 1 Wend. 289; *Lovelack* v. *Cheveley,* 1 Holt. 552. When filed, the specification becomes a part of the declaration, not a substitute for it. The information which the defendant requires, and which the plaintiff is bound to furnish, is the particular items embraced in his cause of action. No formality is required, nor will an error, or a mistake or an omission, not calculated to deceive or mislead, and which does not, in fact, mislead the defendant, be deemed material. The specification may be amended by leave of the court, and any insufficiency will be considered as waived by the defendant, unless objected to prior to the trial. 1 Camp. 69, note, per Lord *Ellenborough;* Howe's Prac. 414–418; *Clark* v. *Munsel,* 6 Met. 373.

In the present case, there was confessedly but a single cause or ground of action, and that was fully disclosed in the account annexed under the first count; no specification, therefore, was necessary. And certainly no defect or informality in the specification furnished could preclude the plaintiff from giving evidence of that single claim under each or any of the counts in his writ.

The second count was for work, &c., and the third count was *quantum meruit* for the same. A full and minute specification was filed under the second count, in which the prices were all carried out; and this conveyed to the defendant all the information which a repetition of the same particulars, under the third count, could have done.

2. The caption of the deposition is fatally defective in several respects. 1st. The time of the taking is not certified. 3d. The words " before me," preceding the name of the magistrate, are omitted; nor are they so used in any

part of the caption as clearly to indicate what magistrate administered the oath, the words " the subscriber," or words to indicate who is meant by " me," being omitted. 3d. There is no seal to the caption affixed by the commissioner, as is expressly required by the statute under which he certifies, that he was appointed, and by virtue of which he attempts to act.  Statutes of N. H. 1830, ch. 1, § 1; *Shepherd* v. *Thompson*, 4 N. H. Rep. 213; Comp. Stat. ch. 486, §§ 15, 20, 21; *Fabyan* v. *Adams*, 15 N. H. Rep. 371; *Powers* v. *Shepherd*, 1 Foster's Rep. 60.

The defects of the caption cannot be supplied by the certificate, because there is no reference from one to the other, and no attempt to make one a part of or adjunct to the other.  Nor can the certificate be substituted for the caption, because it does not purport to be a caption, but only a certificate of the authority under which the commissioner acts and of the method of proceeding, and because it is more faulty than the caption itself.  The oath required before the taking was not the oath required by the statute, and the oath taken after the signing, if any was administered, is not certified.

But the statute under which the commissioner certifies that he was appointed, and by virtue of which he acts, was repealed by the Revised Statutes, ch. 230, § 13, and, therefore, all his doings are a nullity.

3.  The plaintiff's books were undoubtedly evidence against him, in all matters properly charged there by his direction, or with his knowledge and approbation; but entries made by a person having the custody of the books, from no other authority than mere hearsay, the plaintiff not even knowing that such entries had ever been made, should never be admitted to bind the plaintiff, even in matters proper to be charged in his books of account.  Here the clerk was employed to keep the accounts with the workmen who were building the road, their times and the sums paid them, and of his own motion, he enters, in a charge by

itself, the monthly estimates of work done, the money received by the plaintiff, on account of the work done monthly, and the prices for the work, as he understood them from some source, not from the plaintiff. This was no part of his duty. He had no data to insure correctness. The account thus kept was not made the basis of any action on the part of the plaintiff, and he never knew such entries had been made. There is no principle on which such evidence could have been introduced.

4. The profile produced was not the original, was not even a copy of the original, to which the parties had reference when the contract for the work was made; the original was not shown to be lost, nor were the original data and measurements produced, from which the profiles were drawn. On what ground could such a paper be introduced? Its entire credit rested on the testimony of the witness who produced it. How could the plaintiff be bound by it?

*Wiggins* and *Wheeler*, for the defendants.

1. No evidence should have been received under the third count in the plaintiff's declaration. 1 Cow. 572, note; 1 Phil. Ev. 190 ; 4 Stark. Ev. 1054 ; Roscoe's Civ. Ev. 38 ; 2 Saund. Pl. 214 ; 17 Wend. 20 ; 2 N. H. Rep. 338.

2. The objection to the deposition taken at the trial was, that the hour of the caption was not stated in the first certificate, and this appears, although not very distinctly, we admit, by the case ; all other objections, therefore, must be taken as having been waived. There are two certificates of the taking of the deposition, one preceding and the other following the deposition. The latter the court entirely disregarded. To this the defendants excepted, and insisted that the certificates constituted a good and sufficient caption.

Both certificates are to be taken together, both are affixed to the deposition, and both are under the hand and seal of

the commissioner, and constitute his report as to when and how the deposition was taken. Thus considered, and we cannot see any reason why the court should not look at both, it will be seen that they cover all the requirements of the statute. This is all that is required to be set out in the magistrate's or commissioner's certificates. No form of caption or certificate is prescribed by the statute. The words of the statute (ch. 188, § 20) are, " the magistrate taking any deposition shall certify," &c. In these certificates the commissioner has certified all the requirements of this section. The first certificate states every thing but the hour, and that is stated in the second one, and the hour there stated corresponds with the one in the notice to the adverse party. Rev. Stat. ch. 188, §§ 15, 20, 21. All the facts required by the statute are certified by the commissioner. Will the court reject the deposition because the certificate is not formal and in one body ?

The plaintiff's positions and authorities, cited in his brief, do not meet this case. The point settled in *Shepherd* v. *Thompson*, 4 N. H. Rep. 213, is not taken in this case. The objection made is only to the caption. The objection in the case of *Fabyan* v. *Adams*, 15 N. H. Rep. 371, was to the oath which was administered to the deponent. No such objection exists in the case at bar. In the case of *Powers* v. *Shepherd*, 1 Foster's Rep. 60, it did not appear in the jurat that the oath was administered by the person subscribing the jurat; the words " before me," preceding the name of the magistrate, were omitted. They are not omitted in the caption of the deposition in the case at bar. Although they do not immediately precede the name of the commissioner, they do precede it, and in such a place and in such a connection as to show distinctly and certainly that the oath was administered by the person who subscribed the jurat.

The objection raised by the plaintiff's brief, that there was no seal to the caption, is not true in point of fact.

There was a seal attached to each certificate, and the case, as amended, shows it.

The objection that the statute under which the commissioner was appointed has been repealed, is without weight. Although the statute itself has been repealed, yet those holding office under it, at the time of the repeal, continue to hold it according to its tenure, during the pleasure of the governor. Rev. Stat. ch. 230, § 8. Can the tenure of office of those holding office be changed, unless the office itself be abolished?

3. Books of account are evidence of the price as well as of the items charged, and are to be taken together, with their charges and credits, and a party has a right to take his account and proof from his adversary's books, and the non-production of a party's books, when called for for that purpose, would be considered as a very heavy circumstance against him. Swift's Ev. 82; *Palmer* v. *Green*, 6 Conn. Rep, 14, 17; 2 Cowen & Hill's Notes to 2 Phil. Ev. 700, 701.

The plaintiff's books, in this case, were produced upon notice from the defendants. They purported to contain the accounts between the parties, in reference to the subject-matter of the suit. The witness who produced them was the plaintiff's bookkeeper and clerk, during the transaction of the whole business. They contained the entries of all the work done, with the prices of the work carried out, and with credits of all moneys received on account of said work, from the defendants. Our position is, that it was the right of the defendants, the books being produced upon their notice, to put them to the jury, and it was proper and competent for the jury, after hearing such explanations as the plaintiff might make, to consider whether or not the prices, as entered in the plaintiff's books, were the true prices of the work done, as agreed between the parties and understood by the plaintiff, at the time they were made, and how much weight, if any, should be given to them, as admissions of the plaintiff as to the price which he was to receive for his

work. If the books were admissible at all, as evidence against the plaintiff, they were so as to the prices, and it is difficult to conceive upon what reasonable distinction they could be inadmissible, as evidence against the plaintiff as to prices, and not be also as to the credits given to the defendants. It was an entire and full account; the credits were made in reference to the charges, and the charges could only be ascertained and carried out by affixing to them some price for which the work was done.

To allow a party to repudiate his books, as the plaintiff seeks to do in this case, is repugnant to sound public policy, commercial and mercantile integrity and honor, and the establishment of such a rule would weaken, if not entirely destroy that confidence, which it was necessary should exist and be maintained among different members of every community, in their business transactions with each other. What are a party's books of accounts? Beyond the convenience and security of the person to whom they belong, the person keeping them holds out to the world that they shall speak his language and record his transactions, and it is always understood by those who deal with him that this record, when appealed to, will tell the true situation of affairs between the parties. And it is so understood, whether the entries are made by the party himself, or by his bookkeeper or clerk. The plaintiff's books should have gone to the jury.

As in the case of agency generally, the agency must be proved before the agent's admission can be received. Yet when the proof of the agency is doubtful, it may, with the agent's act or declaration, be submitted to the jury, to adopt or reject his act or declaration, as they shall find the fact of agency or not. *Irvine* v. *Buckold*, 12 Serg. & Rawle 35; *Scott* v. *Crane*, 1 Cow. 255; *Roberts* v. *Greeley*, 3 C. & P. 380; 1 Cowen & Hill's Notes 188.

On the question whether the undertaking of a third person to pay was original or collateral, and, therefore, within

the statute of frauds, it appeared that the plaintiff charged the goods in account to B., adding " guardian of E.," the defendant, who had promised to be responsible for goods to be furnished to B. by the plaintiff. The court held this was not conclusive that the credit was given to B., but that it should go the jury, in connection with other circumstances. *Elder* v. *Merfield,* 7 Har. & John. 391.

The counsel for the plaintiff says, " the plaintiff's books are undoubtedly evidence against him, in all matters properly charged there by his direction, or with his knowledge or approbation." Our positions in reference to the plaintiff's direction, knowledge and approbation, are, 1. That he is chargeable with knowledge of the entries made in his books, by his clerk and bookkeeper, in the course of his business, and he cannot set up want of knowledge, to avoid the effect of such entries. 2. That he is chargeable with the true meaning of the entries, as understood by his clerk. His clerk's knowledge was his own knowledge. All the members of a company are chargeable with knowledge of the entries made in their books by their agent, in the course of his business, and with the true meaning of the entries as understood by the agent. *Allen* v. *Coitt,* 6 Hill 318. In the case cited, the defendant's clerk was called by the plaintiff, who produced the journal and read entries, to which the defendants objected, on the ground that they had no knowledge of them. But the court said they must all be taken to have had constructive knowledge of them. As members of the firm, they were affected by the entry, whether made by themselves or their agent.

A member of a club is supposed to be acquainted with its rules. *Ruggett* v. *Musgrave,* 2 C. & P. 556 ; *Ruggett* v. *Bishop,* 2 C. & P. 343. These cases relate to club rules ; but defendants' liability was founded upon their presumed knowledge of the contents of the club-book, because it was open to common inspection of all its members.

In *Manhattan Co.* v. *Lidig,* 4 Johns. 389, it was held that

the entries made, by a bank clerk, of deposits in the bank books, at the time of the deposits, were conclusive on the bank. *Bank* v. *Ridgely*, 1 Har. & Gil. 324, 431; *Bank* v. *Knight*, 3 Pick. 96, 108. The ordinary presumption is that all the partners have access to their books, and know the entries which they contain. *Bank* v. *Binney*, 5 Mason 176, 188. Principally, the cases cited have reference to constructive knowledge; the case at bar is a much stronger one: the plaintiff had probably knowledge, in fact, and it was proper for the jury to consider and determine how it was.

The right to introduce the profile of the work done by the plaintiff, was not based upon the loss or absence of any other profile, the non-production of which was not satisfactorily accounted for, but as a plan, showing the line, location, cuts and fills of that part of the road which the plaintiff undertook to construct. So far, it was original and independent evidence. Indeed, all profiles of this character are drawn from the same data and measurements; they are all originals, and must be mathematically correct, and the same thing. And because the profile would have shown the line of the road the plaintiff contracted to build, its cuts, fills, &c., it should have been admitted. In any view, it was as accurate as any other of the originals.

BELL, J. The first point raised relates to the admissibility of the evidence under the third count. The general rule is that a bill of particulars of demand or set-off, under a judge's order, precludes the party who delivers it from giving evidence of any other demand not stated in it.

In the present case, the objection is not that the particulars of every item of claim upon which the party relies, was not furnished; but they are furnished under the second count, which is general *indebitatus assumpsit* for work, and not under the third count, which is a *quantum meruit* for work. Now we consider it settled, that if the particulars

are sufficient information of the demand or set-off to guard the other party against surprise, inaccuracies not calculated to mislead, will not be material. 2 Saund. Pl. & Ev. 699; 1 Phil. Ev. 490; 1 Cow. 572, note; *Harris* v. *Montgomery*, 5 Eng. L. & E. Rep. 440.

In this case, the defendant was fully apprised that the object of the suit was to recover the items enumerated in the specification; and it was impossible that it could operate as any surprise upon him that the evidence should be introduced under any count of the declaration to which it could properly apply. The defendant could not be misled by the mistake of specifying the items under a single count, instead of under all the counts under which the evidence might be admissible. The ruling of the court below, therefore, seems to us to have been proper. The case of *Tebbets* v. *Pickering*, 5 Cush. 83, fully sustains this view.

The declaration there contained a count on a promissory note and the money counts. It was objected that the plaintiff was required, by a rule of the court, to file a bill of particulars, and had not done so. The court held that the defendant had full notice of this claim from the pleadings. The note now sought to be recovered was set forth as a cause of action in one of the counts. This superseded the necessity of filing a bill of particulars setting forth the note as a demand upon which the plaintiff would rely at the trial.

II. The second point relates to the admissibility of the deposition of Baron. The statute requires (Rev. Stat. 381, ch. 188, § 20,) that "the magistrate, taking any deposition, shall certify such oath, with the time, place and cause of taking the same, and the case and court in which it is to be used, and that the adverse party was or was not present, was or was not notified, and that he did or did not object." It is not, in terms, required that all these things should be included in a single certificate, nor does it seem to us at all material whether the magistrate includes the whole in one

certificate or more, except merely as a matter of convenience. In the present case there are two certificates, each signed by the commissioner and under his seal, and, taken together, they seem to us to contain every thing required by the statute. We see no reason why they may not thus be taken together. The statute does not require any caption, but merely that the justice should certify certain facts; neither does it require any particular form or manner of certifying these facts. We think it sufficiently appears that the oath was taken before the commissioner in the form required by the statutes.

It is contended that the powers of a commissioner, appointed under the statute formerly in force, ceased by the repeal of that statute, contained in the Revised Statutes. It may be, perhaps, true, that where an office is created by statute, the repeal of that statute puts an end to the powers of the officer appointed under it. But where a statute is revised and reënacted, even with some modifications of some of its provisions, the repeal of the former statute attendant upon the revision, is a case materially different. It is not a mere repeal, but one accompanied with provisions which declare that though the statute is repealed, the same law shall continue in force. In such a case, the repeal of the statute does not affect the officer, or his powers or duties, except in those particulars in which the statute is changed or modified. And this we understand to be the effect of the repealing provisions of the Revised Statutes. (ch. 230.) By section 3, " all acts and parts of acts, the subjects of which are revised and reënacted in the Revised Statutes, shall be repealed, with the exceptions and limitations thereinafter expressed." And by section 8, " all persons who, at the time when the said repeal shall take effect, shall hold any office under any of the acts hereby repealed, shall continue to hold the same, according to the tenure thereof, except those offices which have been abolished, and those as to

Currier *v.* Boston and Maine Railroad.

which a different provision shall have been made by the Revised Statutes."

Under the statute of 1830, the commissioner who took this deposition was appointed to continue in office, substantially, during the pleasure of the governor. By the Revised Statutes, it was provided that the governor, with the advice of the council, may appoint in each State, and in each district and territory, a commissioner or commissioners, to continue in office for the term of five years." The limitation of office here prescribed is, in terms, confined to officers appointed under its provisions, and it has no application to persons then in office. The commissioners appointed and in office when the Revised Statutes took effect, were clearly continued in office, unless they should be deemed to fall within the last exception, namely, those offices as to which a different provision shall have been made. And we think it does not fall within this class. A different provision is made as to the officers afterwards appointed, but it is confined to them, and has no reference to commissioners then in office.

III. The exception, in regard to the plaintiff's books, seems to raise two questions. These books contained the amounts of the monthly estimates of the work done and the prices, and accounts of the money received by the plaintiff upon them. The plaintiff's clerk testified that these amounts were given him by the plaintiff, except the prices; that the prices were entered as he understood them to be, from some one, he did not recollect whom, but it was not the plaintiff; that the plaintiff never gave him any directions to carry out the prices, nor stated to him what they were. And he had no knowledge that the plaintiff ever saw these entries.

The admissions of a party, made by himself or his agents, within the legitimate scope of their authority, either orally or in writing, are admissible in evidence against him, without regard to the form of the writing. These entries, if made by the party, were clearly evidence; if properly made

by an agent, they would have the same effect. These books were kept by a clerk of the plaintiff, as his books of account, and it is not questioned that the clerk was properly authorized to enter on these books all such things as were proper to be there entered, to render the books proper books of account; and the entry of the prices of the work done seems to us a proper matter to be there entered, and without which the accounts would be imperfect and incomplete. It was one of those things which it would be ordinarily the duty of a bookkeeper to ascertain and enter, to preserve a proper record of the business of his employer. The effect of these entries would be neutralized merely by showing that they were made upon the information of some person who cannot now be remembered, and not of the principal. It would be necessary to go farther, and to show that they were erroneous or mistaken. Without such evidence, they were admissible evidence of the prices which the plaintiff was entitled to charge for his work as against himself.

There appear also to have been in these books accounts between the plaintiff and the laborers employed by him to do this work, showing the prices allowed them for their labor. It does not very clearly appear for what purpose these accounts were offered. If it was to show what prices were agreed to be paid to the plaintiff by the defendants, they were entirely inadmissible; they had no tendency to prove any thing as to that point. If it was offered as having a tendency to prove the usual price, or market price, or reasonable price of such labor, it seems to us competent. For although there is and every where must be a marked difference between the price allowed by a contractor for mere muscular force, and that which he may claim to be allowed for the labor of the same men, when their strength is controlled and rendered effective by the exercise of his own skill, judgment and capacity for business, and aided by his machinery and capital; still a knowledge, on the part of the jury, of the price of mere muscular strength,

is one element of the computation of the value of such labor to the contracting parties in a case like this; and it has, therefore, a tendency, in some degree, to fix the value of such work. If it was offered with the latter view, it seems to us to have been competent. Otherwise it was properly rejected.

IV. The last objection relates to the profile of the work. The profile, to which the parties referred in making their contract, was not produced. Its non-production was not accounted for. Secondary evidence of its contents was offered. It was properly rejected, because no reason was shown for the absence of the original. No question is made in the argument for the defendant, of the propriety of this ruling. But it is said that it was original and independent evidence. Upon the case as stated, there is no ground for this position. If the evidence had shown that the profile produced was a duplicate of that used by the parties, it would still have been inadmissible, until a foundation was laid for its production, by proof that the original was unattainable. If such proof had been produced, perhaps the profile offered might have been admitted as being in the nature of a duplicate. The evidence that it was drawn from the original data and measurements, would tend strongly to show that it was, substantially, a copy of the original, in the same way as evidence that a lithographed plan was printed from the same drawing on stone as the original, or that a plan had been pricked off the same rough draft as the original had been.

If this evidence had been offered to show the quantity of work agreed to be done, it would be inadmissible. A profile, like a plan, is but a convenient mode of exhibiting the knowledge of facts possessed by a witness. But it is the testimony of the witness to the fact of his survey and the accuracy of his plan, which constitutes the proof. Here the witness says nothing of the accuracy of the data from which the profile was made. He merely says they were the same

from which the original was made, which is no proof of their correctness.

If the absence of the original had been explained, and the profile admitted as secondary evidence, the correctness of the plan would not be material.

The second and third exceptions being sustained, there must be a

*New trial.*